As you decide this case, the Browns, the landowners, ask that you consider three principles of First is the bedrock principle that when someone owns land, they have the right to decide how it's used, when it's used, and if it's used. Second principle is there's an exception to that rule. There's an exception to that bedrock principle. And that exception is in the circumstance of here, where a mineral developer has requested the use of the surface estate for purposes of developing minerals. Under the accommodation doctrine, a common law rule, the surface owner must accommodate the mineral developer to allow that development to take place. So the surface owner no longer has control of the use of the decision or if their own land is going to be used or how it's going to be used. They no longer, in effect, have possession of it. Three, the third principle is the South Dakota legislature decided that it did not particularly care for the accommodation doctrine in all respects. And therefore, it adopted in 1982, Chapter 45, 5A, which is a chapter that's dedicated to the protection of surface owner rights in the circumstance of mineral development. In 45, 5A, the South Dakota legislature modified common law to the extent that it said that if a mineral developer requests the use of a surface estate to develop minerals, then the maximum amount of constitutionally permissible protection should be different categories. And have you triggered any of those categories? Absolutely, Judge Kovas. They did list and enumerate specific elements of damage in Section 4 of that chapter. But in addition to that, in the enabling statute, that is 45, 5A, 1, sub 3. In addition to that, 45, 5A, sub 6, or 6, the South Dakota legislature said, we also want to make sure the surface owner is compensated for interference with the use. Interference with the use of their So that is where the district court made an error, because the district court focused only on subchapter 4, saying that there has to be proof of physical damage of the pore space. And that was too narrow of a decision. The decision was too narrowly construed because of those other two sections that I just mentioned. What is the meaning, then, of the language in 45, 5A, 4 if it limits it, and your argument is, well, there are other provisions that expand it? Right. So the rule is, of course, that all statutes must be construed so that they're construed together and they all make sense. In order to make sense of the two statutes I just cited, they have to look at the broad scope, maximum amount of constitutionally protected protections. That was recently fleshed out. You will notice the district court, close to the last of the decision, the district court said there's still left an unanswered question in the Moser cases, which are North Dakota cases that apply the pore space issue, and both the federal case and the North Dakota Supreme Court case. What was left unanswered is, what is the extent, what is the definition of constitutionally protected, maximum constitutional protection? And that definition was recently decided in the Northwest Landowners case, which came out after the district court made its decision. It was a case that was just decided by the North Dakota Supreme Court in August. And ironically, Continental, the defendant here, also appeared as defendant in that case. And what they said in the Northwest Landowner case is this, is that the definition of maximum amount of permissible protection means that if there's interference with the use of one's property, that is enough, that is enough to trigger the damage, Judge Kobus. And so that, so, and the reason for that is, it goes back to Judge, Justice Scalia's decision clear back in Lucas versus South Carolina Coastal. And what it says is, is that because the right to own property is so sacred, the right to possess it is sacred, it should be protected against all intrusions. And the, are the North Dakota statutes identical to South Dakota's, or are you suggesting this was fundamentally a constitutional interpretation of the similar clause? They're not precise, but they are precise in terms of the maximum amount of permissible constitutional protection. Does North Dakota have the limiting section that limiting the three different kinds of damages? They did. And the district court found, and focused on that actually, said that interference with use, we don't have precisely the same language. And the reason for that is because the North Dakota legislature in 1983 amended their statute to put that phrase in. And that phrase isn't included in the South Dakota statute because it was adopted in 1982. But our position is, is that it doesn't make any difference. We still have sub-3, which is identical. That's 45-5A-1 sub-3. But North Dakota doesn't have the sub-6. That's 45-5A sub-6 that says that, and this is not precise, but it's really very close. All damages to property, real or personal, resulting from interference caused by mineral development. The interference caused by mineral development is precisely what the Northwest Landowners Association decided in August. If there's interference, just by the virtue of the fact that there's taking possession, you no longer, the land owner no longer has the right to control the use. But the statute, however, directly has a, the 45-5A-4 is the compensation, is the compensation section, correct? And that one is very specific, as Judge Kobus has alluded to, with the certain buckets as they've been referred to. Why doesn't that specificity sort of guide what someone could actually be compensated for? Right. To make sense of the entire code, that whole chapter, you have to apply them all together. And I'll go back to the fact that sub-6 isn't included in the North Dakota statute, but it is in the South Dakota statute. So it's redundant, Judge Kelly. I hope I'm being clear about that, is that, in my opinion, sub-6 says the same thing that sub-3 does, but also the same thing that Section 4 of the North Dakota statute that you're referring to, and that is... I'm referring to South Dakota, actually. Okay. I'm sorry if I misunderstood that, but the answer to your question is no, it's not specifically enumerated in 4 in the South Dakota statute, but interference with use is under sub-6. So the Northwest case is a takings case, right? It is a takings case. And this is not. This is a statutory case involving private parties. And obviously the Northwest case doesn't control. But why doesn't that make a difference? You're dealing with birds of very different feathers there. Is it simply because the maximum constitutional language, you're incorporating the takings doctrine into South Dakota code? Right. So the South Dakota legislature said, that's precisely right. The South Dakota legislature said that the maximum amount of permissible constitutional protection, that's what it said. So how do you define that? They didn't define it. So you have to define it through the cases that have been interpreted, including this one, the Northwest Landowners Association. There has to be some definition of what that means. And so the takings case, takings cases really define that. And the reason why they define it is because the concept of mere possession, taking possession away, taking ownership away, the right to possess, the right to use, the right to dispose. And most sacred of all, as Justice Scalia said, in the Lucas case, is the right to exclude. That's a constitutionally protected right. And so to bring definition to 45-5A, those constitutional principles need to be defined. And this is, as you've noted probably from the briefs, a case of first impression. That's never been a North Dakota Supreme Court decide that unanswered question. As the district court said, left unanswered is this question, the question that you asked, Judge Kobus, and that question has now been answered. And as a result of that answer, it requires reversal of the district court as to the correct in deciding that poor space belongs to the surface owner and not to the mineral owner. And that is a question that hasn't been decided yet in South Dakota specifically, but again, North Dakota has. And North Dakota has precisely the same statute that we do, that we relied upon, 43-16-1. Can I ask a question more, a little bit about your argument? You're relying on constitutional sort of ideas here, principles, but your claim is under a statute. So you're saying that under South Dakota statute 45-5A, we're entitled to it, but the argument you're making is that this is a constitutional property right. How do I put those together? Okay. First off, to begin with, we could not bring common law claims because of the accommodation doctrine. We were criticized in briefs because we didn't bring common law claims, but then three pages later in the briefs saying, well, you don't have any common law claims. Well, that's true. We were left with only the statutory remedy. And so we brought our case under 45-5A, which was our cause of action. And so that, Judge Kelly, is where our case arises from, and that's how it's defined. That's how damages are defined in our case, precisely. And so to define them as the district court has defined them, in your view, as unconstitutional? The district court didn't raise the issue of constitution. Well, I guess I'm trying to figure out where your arguments about Justice Scalia's, you know, property right discussions and takings and things like that. I'm trying to figure out where those arguments can be kind of inserted into the statutory argument. Okay. So, of course, the constitutional protection arises from the statute. And so when it comes to a takings, what's in essence a private takings case, the constitutional protections have to be defined by constitutional cases that apply Article Amendment 5 of, excuse me, Amendment 5 of the U.S. Constitution, and in South Dakota's case, Article 6, Section 13, because the constitutional protections have been mandated by the legislature to apply to surface owner damages. And so that's, the definition is because surface damages need to be described, defined, and applied under constitutional principles. That's the answer to that question. And the district court did not get there because, as Judge Kobus alluded to in an earlier question, is because we did not show physical damage to poor space. That's the essence of the district court's decision on that point. Because we could not prove, and we admitted, we conceded, we cannot show damage to poor space, but that doesn't mean we haven't been damaged. We've been damaged because the defendant has occupied our poor space. That was best illustrated in the 28J supplemental letter that both parties filed after the Northwest case came down. And that is, as it says in the letter to the court, Continental has the right to occupy the poor space here, and Browns have no right to possess it contrary to that the ranchers, the Browns, the landowners, have their surface right taken away from them and possessed by the mineral developer under the accommodation rule, then 455A kicks in. In addition to this, I'd like to be able to take up on my rebuttal argument, the other surface damage issue that we have regarding dust, and the court's application of the 2010 releases that were expanded to apply into 2017. Because I'm at the end of my time, with the court's permission, I'd like to be able to address that in my rebuttal, if you please. Thank you. May it please the Court, Poe Leggett for Continental Resources. This has now become a takings case, but there was no claim for takings or common law damages in the complaint. The plaintiff's claim was that the landowner had taken the land away from the ranchers. It was all brought on the statute that Judge Kelly's and Judge Kobus' questions have focused on, Section 4. Appendix 6, the appendix at 6 makes that clear. Nor did the complaint invoke 455A-6 that Mr. Barker just raised here for the first time. The Browns conceded that they did not suffer any sort of harm set out in the statute. They insist, though, that those words have to be read in through other provisions, and the question for this circuit is, how would the South Dakota Supreme Court answer that question? First, they would apply the canons of interpretation. They would say, you don't read into a statute words that are not there. The Court applied that rule in its Rowley decision and declined to read the words habitual offender into that statute. It applied it in the Olson case, declined to read the words publication into that statute, 925 Northwest 2nd at 466. They would similarly decline to do here. Second, it would take note, as the District Court did below, that Browns rely solely on precedent from North Dakota. It would note, as the Court did below, that the North Dakota added the phrase, lost use of and access to the surface owner's land. South Dakota would say, our sister state did this 39 years ago, but our legislature has not added it since. All the more reason for a court not to come along now and read it into the statute, so the Court will not add in language the statute lacks. I would also point out that this question of trying to read into Section 4 from legislative findings or purposes was the same question confronting the Montana Supreme Court in the Burlington case in 2011. They said, as the District Court held here, you can't do that. You focus on the categories where the Court defines what the operative Since it has become a takings argument, let me turn quickly to the issue of what the Browns actually got. Counsel, can I ask a follow-up question on your statutory argument? What do we make of the legislative findings then? What work are they doing in that first section, the Sub 1, when it talks about interference with the use of property? What work is that doing in the statutory scheme? Well, it is setting a purpose and findings, but it is describing in that case, in those words. It's drawing a distinction that is set out in the definitions. The South Dakota law separately defines and differently defines surface owner from surface estate. That's at 3 paragraph 6 and paragraph 7. The surface owner is the person who has possession of the surface of the land. Subsurface is not included. So when you look at those findings, they're talking about agriculture, which is not something that happens 8,600 feet below the ground. They're talking about surface owner's rights. And there's one other phrase in there that using maximum constitutional protection, that basically is inviting the court to step into an impairments of impairment of contracts issue. This court, many years ago, in Murphy v. Amoco production, determined that it was all right for the North Dakota statute to allow damages for loss in value of the land, where the lease already provided compensation for damages to crops and the land loss was less than $5,000. Here, Continental has an express right under its lease to conduct these injection operations. Browns already claim $400,000 for injection just over 3 years. That is more than double what Harding County, South Dakota has gotten in property tax over a 10-year period. Obviously, this is a very significant amount of money. And in equipment manufacturers, this court's precedent from 2019, 932F3rd, the court summed up what the test is for these impairments. Could the contract owner have seen this coming? And the answer is no. Continental could not have seen this kind of claim coming. It got its leases in 1972 with express rights. The surface damages statute came 10 years later. And the Browns deed didn't come until 1996. So holding for the Browns theory here would risk an impairment of contracts claim. And that is something the court should try to interpret to avoid. And if I may, if that answers your question, Your Honor, let me jump ahead to what the claim is based on. We've alternatively moved for affirmance on an alternate theory. We think the district court misapplied South Dakota law in construing the deed. The court said that Browns got the poor space because poor space was not expressly and specifically reserved in the deed in 1996. But the deed does not say that. It doesn't say they get everything that is not specifically reserved. It says the grantors receive full and complete rights and powers to develop oil, gas, and other minerals. Other minerals includes coal. And you cannot mine coal without destroying the poor space in coal. If Browns have the right to exclude because they own the poor space, then they can stop coal mining because it's going to destroy the coal, I'm sorry, the poor space within the coal. But here they concede they do not have the power to stop Continental. Brief at page 24. The court's second error was it misapplied Hugh Miller v. Henson. That case says that a conveyance conveys all benefits and burdens existing at the time of conveyance. When the Browns got the conveyance in 1996, it was already burdened by Continental's leases expressly allowing enhanced oil recovery operations. And that's why we said in our 28-J letter the Browns received no property right to interfere with water injection to enhance oil recovery or to demand payment for it. Let me add one important note because in the common law tradition, courts focus on the particulars of the case in trying to reach a rule of decision. This case isn't about poor space in the abstract. It's about the oil-filled pores in the Red River Formation, which Continental has had under lease for almost 50 years now. So now at the time of conveyance, there was only one source of South Dakota law that expressed a view on whether the injection of water into a well bore to enhance oil recovery was a use of the mineral estate or the surface estate. And that's the 1985 Adornment Mineral Statute. And it says, injection of water to produce or enhance the production of minerals is a use of the mineral estate, codified laws 43-3A-3. We also showed in page 48 of our brief the phrase poor space never appeared anywhere in the code or South Dakota cases until the district court's ruling. Now, finally, no, I still have plenty of time. I'm clipping along very well here. Let me not get ahead of myself, Your Honor. Mr. Barker suggested, isn't this a dominant estate case even though he said he didn't bring a dominant estate case? The question is, if the district court is upheld on this interpretation of the deed, what's the legal doctrine that would determine whether someone could produce coal in their poor space or oil in their poor space? Mr. Barker suggested that maybe had he brought the case, it could have been a dominant estate issue. That would be true. Maybe you're much more well-versed in this area of the law than I, so I will preface it by that. But I thought that there was some implicit right to reasonable use, reasonable and necessary use of the surface by the mineral to effectuate the goals of the lease. Is that how you can sort of, I guess, put the two together, that if the poor space is actually the Browns, but the reasonable and necessary use would mean that the coal production or whatever it is that you're concerned about would continue? Or have I misunderstood that reasonable and necessary use? You have hit the nail on the head. The doctrine is that at the surface, both parties have rights to use the surface, and sometimes those rights conflict. The dominant mineral estate means that as long as the use is reasonable, not excessive, the mineral owner can use the surface without payment of compensation. But the issue is, would the South Dakota Supreme Court apply this subsurface underground? And the answer is no, and here's how this court can tell. In 1887, the Dakota Territory adopted the Civil Code from the state of California, and in section codified laws here, 43-16-1, that's the everything above and everything beneath statute that Mr. Barker referenced, that comes straight from California Civil Code, section 829. So South Dakota, given the ancestry of that statute, is more likely to look to California law than to that of any other state, and here's what California has said. In the casinos case, on page 49 of our brief, it said the surface owner does not have the right to authorize injection of water into the mineral owner's estate. And in Ames v. Empire Store Mines, on page 50 of our brief, it said the surface owner, despite a statute saying everything beneath, does not have the right to stop the mineral owner from coming on under the surface owner's surface to mine property. Would that be just, is that just, and again, maybe I'm not quite getting it, but if it is, if the pore space is part of the surface rights, then doesn't just the doctrine apply to, you know, you're saying surface surface, but if you include the pore space as part of the surface ownership, isn't that subject to the reasonable and necessary use, or am I still not quite getting it? No, I think you are getting it. If South Dakota were to say that it was possible for two owners to have rights in the same microscopic pore space, 8,600 feet below the surface, that would be the only doctrine they would have available to handle that dispute. But the question is, would they take that position to begin with? Their state statute says injecting, as Continental is doing, is a use of the mineral estate. That cuts against the position the Browns want to take here. And then we've had the two pieces of guidance from California. California, despite its long years of oil and gas development, has never applied the reasonable accommodation doctrine to subsurface pore space. If we agree with your argument on the limitation of damages in the statute, do we need to decide this issue, the ownership issue? You don't. You can assume it, arguendo, and still take care of the case, but we ask that you do so expressly because right now we have a ruling against us in district court to the contrary. But you're quite right, Judge Kobus, this is not essential to the decision. I have a minute and a half, and Mr. Barker said he wants to talk about dust. There were two releases in 2010 that the Browns signed. They got nice checks for them, and it gave a list of things that they were being compensated for and the damages they were releasing. But that list said, including but not limited to. And the Browns have said elsewhere, and it's quoted in the district court opinion, I believe, or in our moving papers, they said that dust from trucks is the most foreseeable consequence of oil and gas development in rural parts of the state. The Browns did see this coming, and yet they agreed to language that said, including but not limited to. If the 2010 agreements are as broad as your position is that they are, what work is the 2017 payment agreement doing? Why did Continental need a release in 2017 in connection with that agreement? Because it wanted longer-term easements across the land that actually could stay beyond the useful life of the particular well. Also, the court would benefit from considering two provisions in the 2017 agreement because it is structured differently. I'll be quick and get out of here. In the appendix at page 111, there was an agreement that said two things. First, there is no release of stuff including but not limited to. That did not appear in 2017. Second, it had language that said, if you come in and change your pipeline, then we need a new agreement. Both of those are different. They knew how to get the language they wanted in 2017. They didn't get it in 2010. And as for the argument that there were new, that it was limited to an oil well, that's all the release was, the district court didn't rule on that because it wasn't raised below. But why would the parties have felt that way? Because this was already in a unit for the purpose of enhanced oil and gas recovery. So, naturally, the parties would not have limited it just to the drilling of an oil well. I'm out of time. Thank you. Counsel, I think you're out of time. Given that you didn't have much chance to address the lease issues, I'll give you two minutes to address. I thought I had three minutes left, but I'm sorry. I went over. I will ask the clerk. Clerk, did counsel have any additional time left? No. Okay. I'll be very brief. First off, the 2010 agreements, you were precisely right, Judge Kelly. They were talking. They sat down with the Browns at their kitchen table and said, we're going to drill an oil well. And they signed the 2010 agreements for an oil well. Seven years later, they put in an injection well. One month before they started hauling, before trucks started hauling for over a year, seven days a week, 365 days plus, another month, they signed another agreement in 2017 that says this will prevent, in essence, this will prevent the trucks from having to haul. One month later, they started hauling. And so, if that doesn't create an ambiguity, the 2010 agreements and the 2017 agreements must be construed together. They must be construed from the context and the intent of the parties at the time. Continental wasn't even a party to the 2010 agreements. One thing about the Burlington case that was mentioned by counsel on the poor space issue, Burlington, Montana does not have an equivalent statute of maximum amount of constitutional protection. And so the Burlington case upon which the district court relied doesn't have that very key provision in it to provide protection to the Browns as surface owners in this case. Canons of interpretation, I agree. The Continental cited a case going back to 1910, Miller v. St. Paul Fire and Marine. You have to interpret the agreements. That means the 2010 agreements, the 17 agreements, and the context of which they were executed. And it's from the standpoint and from the viewpoint of the person who had the least knowledge. The Browns certainly did not have the knowledge of what they could be siding off on. Included but not limited to is a technical term. It's a term of art used in the legal world, not for ranchers who are ranching in Harding County, South Dakota. I don't know, counsel. Included but not limited to is pretty commonsensical, isn't it? I mean. It is for us as lawyers, but I don't think it's that common for ranchers saying included but limited to means that I'm giving away damages all the way to perpetuity. I don't think that's how it should have been applied, especially when the 2017 agreements. I see I'm out of time. Wow. Thank you.